**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JASON B. NICHOLAS,

                            Plaintiff,

      v.

BASIL SEGGOS, et al.,

                            Defendants.

No. 8:23-CV-463
(GTS/CFH)

_____

**APPEARANCES:**

Jason B. Nicholas
86 Duane Street
Malone, New York 12953
Plaintiff pro se

# REPORT-RECOMMENDATION AND ORDER

## I. Background

Plaintiff pro se Jason B. Nicholas ("plaintiff") commenced this action on March 22, 2023, by filing a complaint in the U.S. District Court for the Southern District of New York. See Dkt. No. 1 ("Compl."). Plaintiff also filed an application to proceed in forma pauperis ("IFP"), and a motion for a preliminary injunction. See Dkt. Nos. 2, 3, 4. The case was transferred to this Court on April 14, 2023. See Dkt. No. 8. The Court ordered that its decision on the motion for a preliminary injunction be held in abeyance pending the Court's initial review of plaintiff's complaint and his IFP application. See Dkt. No. 9. On July 11, 2023, plaintiff filed an amended complaint and an amended memorandum of law in support of his motion for a preliminary injunction. See Dkt. Nos. 10 ("Am. Compl."), 11. Plaintiff filed a letter motion asking the Court to issue a decision

on his motion for a preliminary injunction.  See Dkt. No. 12.  The Court denied the letter motion without prejudice and explained that it will not decide the motion for a preliminary injunction until "Defendants file their response to that motion, which is not due until (1) TWENTY-ONE (21) DAYS after proper service of the summons and Amended Complaint is effectuated upon the named Defendants, and (2) the case survives initial review and Plaintiff's motion for in forma pauperis status is granted."  Dkt. No. 13.

The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[1]

## II. Initial Review

### A. Legal Standard

Section 1915[2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

---

[1] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

[2] The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates.  See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section as making IFP status available to any litigant who can meet the governing financial criteria.  See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted).  This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Pro se litigants are "not exempt . . . from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999)

(internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought . . . ."  FED. R. CIV. P. 8(a)(1), (3).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too [] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id. (citation omitted).  If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff

4

leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

**B. Plaintiff's Complaint**

Plaintiff filed his original complaint on March 22, 2023, and he filed his amended complaint on July 11, 2023. See Compl.; Am. Compl. Plaintiff reiterated the allegations from his original complaint in his amended complaint. As such, the amended complaint is the operative pleading in this matter. Plaintiff attached exhibits to his original complaint but did not reattach them to his amended complaint. See Compl. at 14-49. He instead incorporates the exhibits by reference. See Am. Compl. at 3, ¶ 4.[3] "Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint." Wellington v. Langendorf, No. 9:12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *3, n.2 (N.D.N.Y. July 15, 2013).[4] For the sake of efficiency, the Court will not require plaintiff to resubmit the exhibits and will consider them as incorporated into the amended complaint.

Plaintiff is an independent journalist who applied for a New York State license to be a fishing, camping, and hiking guide. See Am. Compl. at 3, ¶ 4. Plaintiff brings this action against Basil Seggos, the Commissioner of the New York State Department of Environmental Conservation ("DEC"); Gaye Somogie, DEC's Licensed Guide Program Coordinator from at least November 4, 2022, to March 22, 2023; and Joseph Therrien,

---

[3] Citations are to the pagination generated by the Court's electronic filing system.
[4] This unpublished decision has been provided to plaintiff.

5

DEC's current Licensed Guide Program Coordinator[5] (collectively "defendants").  See id. at 3-4, ¶¶ 5-7.

The New York State Constitution contains a "Forever Wild Clause" which requires that specific state lands known as the Forest Reserve remain wild forest lands. Am. Compl. at 7, ¶ 16.  In 2017, plaintiff reported on then-governor Andrew Cuomo and the DEC's plan to build "luxury 'glamorous camping' grounds in the New York State Forest Preserve."  Id. at 6, ¶ 15.  Plaintiff reported that local environmental groups and residents were prepared to sue to challenge the plan.  See id.  As part of his reporting, plaintiff spoke to the executive director the "Protect the Adirondacks!" organization, and a confidential source inside the state government, both of whom spoke on Mr. Cuomo's plan to increase motorized recreational uses in the Forest Reserve.  See id. at 7-8, ¶ 17.  Commissioner Seggos wrote an article which claimed that the "glamp-grounds" would "be primitive in nature, temporary, and self-serviced" with "no more than a dry tent structure with a cot and mattress."  Id. at 9, ¶ 19.  Plaintiff contradicted Commissioner Seggos' statements in his reporting with a 2015 DEC report which noted that the "glamp-grounds" would need to include full-service kitchens, toilets, motorized access, and road access.  See id. at 9, ¶ 20.  The DEC's plan also included a portion of the Boreas Pond Tract which was classified as protected wilderness.  See id. at 10, ¶ 21.  To be built on, the land would have to be reclassified by the Adirondack Park Agency ("APA"), which it refused to do.  See id. at 10-11, ¶¶ 21-22.  "[T]he APA acted after [plaintiff's] report on the glamp-grounds controversy was published[.]"  Id. at 11, ¶ 22.

---

[5] Plaintiff did not name Joseph Therrien in his original complaint.  See Compl. at 1.  The Clerk of the Court is respectfully directed to add Therrien as a defendant on the docket.

In 2018, plaintiff learned that the New York State Office of Parks and Recreation ("OPR") and the Open Space Institute ("OSI") were planning to rebuild a carriage road. See Am. Compl. at 11-12, ¶¶ 23-24.  Plaintiff sued OPR and Commissioner Seggos, but the lawsuit was dismissed.  See id. at 12, ¶¶ 24-25.  Plaintiff contacted OSI's president who agreed not to rebuild the road.  See id. at 12, ¶ 25.  In 2021, Mr. Cuomo was replaced by Governor Kathy Hochul, and the DEC began reconstructing a road it had previously deconstructed.  See id. at 13, ¶ 26.  In October 2022, plaintiff moved from New York City to Malone, New York with the hopes of becoming an outdoor guide.  See id. at 16, ¶ 30.  In 2023, plaintiff created a news blog and reported on Governor Hochul and the DEC's plans.  See id. at 13-14, ¶ 27.  He also reported on a lawsuit that had been brought against the DEC "for violating the New York State Constitution's new Green Amendment by allowing New York City to dump a literal mountain of trash on a small town outside Rochester." Id. at 14, ¶ 28.

New York requires a license to be an outdoor guide.  See Am. Compl. at 16, ¶ 31.  New York empowers the "DEC to 'establish standards and procedures for testing and licensing of guides' by regulations." Id. (quoting N.Y. Env't Conserv. L. § 11-0533).  Title 6 of the New York Code of Rules and Regulations ("N.Y.C.R.R.") § 197.3 governs guide licensing and contains nine requirements which must be met prior to applying for a license.  See id. at 16-17, ¶ 32.  The regulation instructs that "a person who" completes all of the requirements "will be issued" a license.  Id. (quoting 6 N.Y.C.R.R. § 197.3).  Plaintiff alleges that he completed all of the licensing requirements.  See id. at 17-18, ¶¶ 33-38; see also Compl. at 14-21.  He then submitted a complete application

7

on November 4, 2022.[6]  See id. at 18, ¶ 39.  Plaintiff alleges that it can take "five-to-six to process the application and issue the guide license[.]"  Id. at 18, ¶ 40.  In an e-mail from Ms. Somogie, she stated that an application "can take four to five weeks to review and process."  Compl. at 36.  Plaintiff e-mailed Ms. Somogie on December 30, 2022, informing her that he changed his address, which she acknowledged in an e-mail on January 3, 2023.  See Am. Compl. at 18, ¶ 40; see also Compl. at 38-39.  He e-mailed her on February 14, 21, and 27, 2023, asking for an update on his application.  See Am. Compl. at 18-19, ¶ 40-41; see also Compl. at 38, 42.  Ms. Somogie did not respond to the e-mails.  See Am. Compl. at 18-19, ¶¶ 40-41.  Plaintiff then called the DEC, twice.  See Am. Compl. at 19, ¶ 42.  Ms. Somogie e-mailed plaintiff on March 2, 2023, and informed him that the DEC received his application, and it was in review.  See id.; see also Compl. at 44.  Plaintiff e-mailed Commissioner Seggos on March 17, 2023, as well as Executive Deputy Commissioner Sean Mahar and Chief of Staff Erica Ringewald.  See id. at 19, ¶ 43.  No one responded to plaintiff.  See id.

"After [he] placed [his] lawsuit in the mail, [Ms.] Somogie" e-mailed plaintiff telling him that his license was being processed.  Am. Compl. at 19, ¶ 44.  In the e-mail, Ms. Somogie notified plaintiff of typographical errors in his application that needed correction.  See id. at 19-20, ¶ 44.  Plaintiff e-mailed corrected documents on March 22, 2023.  See id. at 20 ¶ 45.  Plaintiff again e-mailed Ms. Somogie on May 1, 2023, and Mr. Therrien responded.  See id. at 20, ¶ 46.  Mr. Therrien explained that Ms. Somogie was on extended leave and that plaintiff's application was among a large backlog of

---

[6] On the first page of his amended complaint, plaintiff states that he submitted his complete application on November 7, 2022.  See Am. Compl. at 1, ¶ 1.  However, he later states that it was on November 4, 2022.  See id. at 18, ¶ 39.  In his original complaint, plaintiff stated that he submitted his complete application on November 4, 2022.  See Compl. at 1, ¶ 1; 8, ¶ 20.

8

applications but would be processed as quickly as possible.  See id.  Plaintiff e-mailed on June 2, 2023, and Mr. Therrien explained that plaintiff's application was still under review.  See id. at 20, ¶ 47.  As of the time plaintiff filed his amended complaint on July 11, 2023, he had not received a decision on his application.  See id. at 21, ¶ 49.

Plaintiff alleges that defendants' conduct violates his First and Fourteenth Amendment rights to free speech and association, and substantive and procedural due process.  See Am. Compl. at 24-25, ¶¶ 60-62.  He also contends that the DEC's "licensing regime . . . is unconstitutional on its face."  Id. at 24, ¶ 59.  Plaintiff seeks a declaration that "New York's guide licensing regime is unconstitutional on its face;" an injunction preventing defendants from enforcing any penalties for guiding without a license "until Defendants promulgate regulations that satisfy the Constitution;" monetary damages; and costs and fees.  Id. at 26, ¶¶ 1-6.

### III.  Analysis

#### A.  Individual Defendants in their Official Capacities

Plaintiff seeks to sue defendants in their individual and official capacities.  See Am. Compl. at 3-4, ¶¶ 5-7.  "As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress."  Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014) (citation omitted).  "This immunity 'extends beyond state agencies to state officials at those agencies working on behalf of the state (i.e. in their official capacities).'"  Morris v. New York State Police,

268 F. Supp. 3d 342, 359 (N.D.N.Y. 2017) (citation omitted).  Additionally, "declaratory relief, while equitable in nature, is barred by the Eleventh Amendment when it would serve to declare only past actions in violation of federal law; retroactive declaratory relief cannot be properly characterized as prospective." Aron v. Becker, 48 F. Supp. 3d 347, 367 (N.D.N.Y. 2014) (citation and quotation marks omitted).

"*Ex parte Young*, 209 U.S. 123 (1908), [] provides a 'a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law.'" Silva v. Farrish, 47 F.4th 78, 84 (2d Cir. 2022) (quoting Whole Woman's Health v. Jackson, 142 S. Ct. 522, 532 (2021)).  "To determine whether *Ex parte Young* applies to a complaint, [the Court] conduct[s] a 'straightforward inquiry' into whether the complaint (1) 'alleges an ongoing violation of federal law" and (2) 'seeks relief properly characterized as prospective.'" Id. (quoting Verizon Md. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)).

Insofar as plaintiff seeks to sue defendants in their official capacities for monetary damages under § 1983, such claims are barred by Eleventh Amendment immunity. See Murtaugh v. New York, 810 F. Supp. 2d 446, 470 (N.D.N.Y. 2011) (concluding that claims against the DEC Commissioner for "civil penalties" were barred by the Eleventh Amendment).  However, insofar as plaintiff alleges that the licensing regulations violate the First and Fourteenth Amendments and he asks the Court to declare them unconstitutional and enjoin defendants from enforcing them, the claims can be fairly characterized as prospective and within the Ex Parte Young exception.  As explained below, plaintiff has stated constitutional claims sufficient to proceed past initial review.

10

See infra at 12-18.  Thus, the claims against the defendants in their official capacities seeking injunctive and declaratory relief that are not barred by sovereign immunity can proceed.  See Silva, 47 F.4th at 86 ("[T]he plaintiffs' claims seeking prospective relief against the DEC officials fall within the *Ex parte Young* exception to state sovereign immunity and accordingly may proceed.").

### B.  First Amendment

#### 1.  Right to Association

"The United States Constitution affords protection to two distinct types of association, 'intimate association' and 'expressive association.'"  Sanitation & Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 995-96 (2d Cir. 1997) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984)).  The right of intimate association "guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the state.  At a minimum, it extends to relationships that 'attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives.'"  Id. at 996 (citation omitted).  Expressive association "protects the right of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as speech, assembly, the exercise of religion, or petitioning for the redress of grievances."  Id.; see also Slattery v. Hochul, 61 F.4th 278, 286 (2d Cir. 2023) (citation omitted) ("The Court has [] 'long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'").

11

Plaintiff's complaint does not state a claim concerning intimate association as it does not relate in any way to intimate relationships.  See generally Am. Compl.  The undersigned comes to a different conclusion as to expressive association.  Plaintiff alleges that (1) the DEC's regulations do not provide him a mechanism to challenge its conduct; and (2) the DEC's regulations and its officials' actions are keeping him from being an outdoor guide and would criminalize him if he engaged in guiding without a license.  See id. at 20-21, ¶¶ 48-50.  At this early stage, this is sufficient to state a claim for a First Amendment expressive association violation.  See Roberts, 468 U.S. at 636 (O'Connor, J., concurring in part) ("Even the training of outdoor survival skills or participation in community service might become expressive when the activity is intended to develop good morals, reverence, patriotism, and a desire for self-improvement").

### 2. Retaliation

"To state a First Amendment retaliation claim, a plaintiff must allege that: (1) her 'speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech.'" A.S. v. City Sch. Dist. of Albany, 585 F. Supp. 3d 246, 269 (N.D.N.Y. 2022) (quoting Cox v. Warwick Valley Central Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011)).  "The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" Snyder v. Phelps, 562 U.S. 443, 452 (2011) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964)).  "Accordingly, 'speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to

12

special protection.'" Id. (quoting Connick v. Myers, 461 U.S. 138, 145 (1983)). At this early stage, plaintiff has sufficiently stated a First Amendment retaliation claim given his allegations that he reported on the DEC and New York officials' conduct related to the DEC's plans and the DEC and its officials have refused to grant him a guide license as a result.

### C.  Fourteenth Amendment

Plaintiff alleges that the DEC regulations violate the Fourteenth Amendment because they do not contain any time constraints on responding to applications and do not have "a mechanism for applicants denied a license, or whose request for a license is ignored, to request a hearing or an appeal of any kind[.]" Am. Compl. at 21, ¶ 50.

#### 1.  Procedural Due Process

The Fourteenth Amendment forbids states from depriving any person of property without due process of law. See U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). "The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes, and, if so, what process was due before plaintiff could be deprived of that interest." Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (citation omitted).

It is possible for a person to have a property interest in a vocational license. See New York State Trawlers Ass'n v. Jorling, 16 F.3d 1303, 1311 (2d Cir. 1994) ("Persons engaged in an industry affecting the public interest may be subject to state regulation, including licensing schemes. One's interest in a license may be a property interest

13

cognizable by the Due Process Clause of the Constitution . . . . Constitutional cognizance of a property interest in a vocational license requires states to administer licensing schemes fairly.").

However, "there can be no Due Process Clause violation 'so long as the State provides a meaningful postdeprivation remedy.'" Clark v. Dominique, 798 F. Supp. 2d 390, 401 (N.D.N.Y. 2011) (quoting Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996)). "In New York State, an Article 78 proceeding provides an avenue of postdeprivation redress that satisfies due process requirements." Id. (collecting cases). "[I]t matters not whether a plaintiff actually avails [him]self of the state court post-deprivation process. So long as that process is available, a due process claim must be dismissed." Id. (first alteration in original) (quoting Longo v. Suffolk Cnty. Police Dep't, 429 F. Supp. 2d 553, 560 (E.D.N.Y. 2006)). "In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. Under those circumstances, the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (citation and quotation marks omitted).

Generally, "[t]hose who wish to challenge agency determinations under article 78 may not do so until they have exhausted their administrative remedies[.]" Walton v. New York State Dept. of Correctional Servs., 863 N.E.2d 1001, 1006 (Ct. App. 2007). "Absent exceptional circumstances, it is only after such a hearing is held, and a final determination made, that an aggrieved party may bring a[n] article 78 proceeding to

14

challenge the legality of the determination[.]" Matter of Pyramid Co. of Onondaga v. Hudacs, 597 N.Y.S.2d 816, 818 (App. Div. 1993). "An article 78 proceeding may lie in the absence of a final determination where the relief sought is by way of prohibition or by way of mandamus to compel performance by an administrative agency of a duty enjoined by law." Hamptons Hosp. & Med. Ctr., Inc. v. Moore, 417 N.E.2d 533, 537 (Ct. App. 1981) (footnote omitted). "Mandamus for such purpose, however, lies only where the right to relief is 'clear' and the duty sought to be enjoined is performance of an act commanded to be performed by law and involving no exercise of discretion." Id. (citation omitted); see also Hoffmann v. New York State Indep. Redistricting Comm'n, 192 N.Y.S.3d 763, 768-69 (App. Div. 2023) (citations omitted) ("Discretionary acts involve the exercise of judgment that may produce different and acceptable results[.]").

Plaintiff alleges that DEC has not granted or denied his application. See Am. Compl. at 21, ¶ 49. Thus, there has been no final agency determination which could be brought for review under Article 78. However, plaintiff also alleges that the DEC has no administrative process that he could have exhausted. See id. at 24, ¶ 59. Plaintiff contends that the licensing regulation gives "[d]efendants absolute, unbridled discretion to issue, ignore or reject guide license applications," but that the statutory language is "mandatory." Am. Compl. at 16, ¶ 32; 24, ¶ 59. Plaintiff does not allege that he pursued an Article 78 proceeding or that such a proceeding was unavailable to him.

At this early stage, the undersigned recommends allowing the procedural due process claim to proceed past initial review as plaintiff alleges that there was no administrative process available for him to exhaust administrative remedies and it is not certain whether the right to the license is clear and nondiscretionary.

15

## 2. Substantive Due Process

The Fourteenth Amendment also "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021) (citation omitted) (alteration in original). "The first step in substantive due process analysis is to identify the constitutional right at stake." Id. (citation omitted). "Substantive due process protections extend only to those interests that are 'implicit in the concept of ordered liberty,' which are rights 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Smith v. Hogan, 794 F.3d 249, 255-56 (2d Cir. 2015) (citations omitted). "Next, the plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hurd, 984 F.3d at 1087 (citation and quotation marks omitted). "The interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Id. (quoting Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2012)).

"[C]riteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). "To prevail when challenging executive action that infringes a protected right, a plaintiff must show not just that the action was literally arbitrary, but that it was 'arbitrary in the constitutional sense[.]'" O'Connor v. Pierson, 426 F.3d 187, 203 (2d Cir. 2005) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)). "Mere irrationality is not enough: 'only the most

egregious official conduct,' conduct that 'shocks the conscience,' will subject the government to liability for a substantive due process violation based on executive action." Id. (quoting County of Sacramento, 523 U.S. at 846). "[T]he measure of what is conscience-shocking is no calibrated yard stick . . . ." Id. (citation omitted). "[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." Id.

"Generally, property interests related to employment are not among protected fundamental rights . . . ." Maniscalco v. New York City Dep't of Educ., 563 F. Supp. 3d 33, 39 (E.D.N.Y. 2021), aff'd, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021) (summary order), cert. denied, 142 S. Ct. 1668 (2022). "[T]he Supreme Court, th[e] [Second] Circuit, and the other Circuits addressing the issue have all indicated that the right of occupational choice is afforded Due Process protection only when a plaintiff is 'complete[ly] prohibit[ed]' from engaging in his or her chosen profession." Barzilay v. City of New York, 610 F. Supp. 3d 544, 614 (S.D.N.Y. 2022) (alterations in original) (quoting Hu v. City of New York, 927 F.3d 81, 102 (2d Cir. 2019)). "In other words, 'one must have no ability to practice one's profession at all in order to state a claim for a deprivation of a liberty interest.'" Id. at 615 (citations omitted). Plaintiff alleges that New York requires a license to work as an outdoor guide and criminalizes guiding without a license. See Am. Compl. at 16, ¶ 31. He contends that defendants will not issue him a license; thus, he cannot work as a guide. See id. at 22, ¶ 51. It is sufficient at this early stage to allege that he is being completely prohibited from engaging in his chosen profession. Additionally, plaintiff alleges that despite meeting all of the requirements, amending his application when requested, and repeatedly contacting defendants, his

17

application has not been approved or denied.  See id. at 17-21, ¶¶ 33-49.  He alleges that despite being informed of "a high volume and backlog of applications[,]" that defendants' actions are wholly arbitrary.  Id. at 20-21, ¶¶ 46, 48-49.  At this early stage, this is sufficient to state a substantive due process claim.

### IV.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's amended complaint against defendants in their official capacities insofar as he seeks monetary damages (Dkt. No. 10) be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's amended complaint (Dkt. No. 10) otherwise be permitted to proceed; and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order in its entirety, the matter be returned to the Magistrate Judge or to the Clerk of the Court for service of the amended complaint for any claims that were permitted to proceed in the amended complaint; and it is

**ORDERED**, that the Clerk of the Court add Joseph Therrien as a defendant in this matter; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[7]

Dated:  September 19, 2023
       Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).